# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWARD LUNA,<br><br>       Plaintiff,<br><br>    v.<br><br>DR. MOON, et al.,<br><br>       Defendants. | Case No. 1:16-cv-00313-LJO-SAB (PC)<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br><br>(ECF Nos. 43-46, 47, 48-49, 50, 51-52)<br><br>OBJECTIONS DUE WITHIN THIRTY DAYS |

## I.

## PROCEDURAL HISTORY

Edward Luna ("Plaintiff"), a state prisoner, is appearing pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. This action is proceeding on Plaintiff's second amended complaint against Dr. Wayne Ulit, Dr. Jong Moon, and Chief Medical Officer Wang ("Defendants") for deliberate indifference to serious medical needs in violation of the Eighth Amendment. (ECF No. 16.)

On August 1, 2018, Defendants filed a motion for summary judgment on the ground that Plaintiff has not exhausted his administrative remedies in this action.[1] (ECF Nos. 43-46.) On August 24, 2018, Defendants filed a notice that Plaintiff had not filed an opposition to the motion. (ECF No. 47.) Plaintiff filed an opposition on August 31, 2018. (ECF Nos. 48-49.) On

---

[1] Defendants provided Plaintiff with notice of the requirements for opposing a motion for summary judgment with the motion for summary judgment. <u>Woods v. Carey</u>, 684 F.3d 934, 939 (9th Cir. 2012); <u>Klingele v. Eikenberry</u>, 849 F.2d 409 (9th Cir. 1988).

1  September 5, 2018, Plaintiff filed an opposition to Defendants' notice of nonopposition.  (ECF
2  No. 50.)  On September 7, 2018, Defendants filed a reply and objections to Plaintiff's opposition.
3  (ECF Nos. 52.)

4      On October 16, 2018, Defendants' request to vacate the scheduling order until decision
5  was issued on the motion for summary judgment was granted.  (ECF Nos. 53-54, 56.)  On
6  November 26, 2018, Plaintiff filed a notice of joinder in Defendants' request to vacate the
7  scheduling order.  (ECF No. 57.)

**II.**

**LEGAL STANDARDS**

**A.      Exhaustion of Administrative Remedies**

11      Pursuant to the Prison Litigation Reform Act ("PLRA") of 1996, "[n]o action shall be
12 brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by
13 a prisoner confined in any jail, prison, or other correctional facility until such administrative
14 remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Exhaustion is a mandatory
15 requirement, McKinney v. Carey, 311 F.3d 1198, 1199-1201 (9th Cir. 2002) (citing Booth v
16 Churner, 532 U.S. 731, 741(2001)), and prisoners are required to have exhausted all available
17 administrative remedies before commencing suit.  Jones v. Bock, 549 U.S. 199, 211 (2007).
18 Exhaustion is required regardless of the relief sought by the prisoner or offered by the process,
19 Booth, 532 U.S. at 741, and the exhaustion requirement applies to all suits relating to prison life,
20 Porter v. Nussle, 435 U.S. 516, 532 (2002).

21      As noted above, Plaintiff in this case is a California state prisoner.  The California
22 Department of Corrections and Rehabilitation ("CDCR") has an administrative grievance system
23 for prisoner complaints.  The CDCR requires a prison inmate to satisfy the administrative
24 exhaustion requirement by following the procedures set forth in sections 3084.1 through 3084.8
25 of Title 15 of the California Code of Regulations.  An inmate "may appeal any policy, decision,
26 action, condition, or omission by the department or its staff that the inmate . . . can demonstrate
27 as having a material adverse effect upon his or her health, safety, or welfare."  Cal. Code Regs.
28 tit. 15, § 3084.1(a).

The regulations require the prisoner to proceed through all three levels of review.  See Cal. Code Regs. tit. 15, § 3084.2(a).  A decision at the third level of review, known as the director's level of review, is not appealable and constitutes the third level of administrative review.  Id.; Cal. Code Regs. Tit. 15 § 3084.8(c)(3).

California state prisoners are required to use this process to exhaust their claims prior to filing suit.  McKinney, 311 F.3d at 1199-1201; Albino v. Baca, 747 F.3d 1162, 1166 (9th Cir. 2014) (en banc).  That is, exhaustion requires that the third level of administrative review must have been completed prior to filing the lawsuit, and exhaustion may not occur during the pendency of the federal suit.  McKinney, 311 F.3d at 1200; Lira v. Herrera, 427 F.3d 1164, 1170 (9th Cir. 2005); Akhtar v. Mesa, 698 F.3d 1202, 1212 (9th Cir. 2012).

**B.  Motion for Summary Judgment**

Any party may move for summary judgment, and the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011).  Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case. . .."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp., 477 U.S. at 322.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a

genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

**III.**

**DISCUSSION**

### A.   Motion to Strike Plaintiff's Opposition

Initially, the Court addresses the timeliness of Plaintiff's opposition to the motion for summary judgment and Defendants' request that the opposition be stricken for failure to comply with the Local Rules.

On August 24, 2018, Defendants filed a notice that no opposition to the motion had been filed by August 22, 2018, and requested that the motion for summary judgment be granted. (ECF No. 47.) Plaintiff filed an opposition to the notice of nonreceipt on September 5, 2018. (ECF No. 50.) Plaintiff states that he did not receive the motion for summary judgment until August 8, 2018, and therefore, his opposition to the motion was not due until August 29, 2018. Defendants reply that Plaintiff's opposition was not timely filed and did not comply with the Local Rules and request that it be stricken from the record and summary judgment be granted. (ECF No. 51.)

Defendants filed and served the motion for summary judgment on August 1, 2018. (ECF No. 43 at 3.) Pursuant to Rule 230 of the Local Rules of the Eastern District of California, Plaintiff's opposition to the motion was due within 21 days of the date of service. L.R. 231(l). Plaintiff is incorrect that the date of service runs from the date that he received the motion. Service by mail is complete upon mailing the document to the last known address of the recipient. Fed. R. Civ. P. 5(b)(2)(c). The date of service in this instance was August 1, 2018. As Plaintiff was served by mail, the Federal Rules of Civil Procedure provide that he has an additional three days added to the deadline to respond. Fed. R. Civ. P. 6(d). Therefore, Plaintiff's opposition was due on August 25, 2018, which is a Saturday. Since the deadline to

file the opposition fell on a Saturday, it is extended to the first accessible day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(3). Therefore, in this instance, Plaintiff's opposition was due by August 27, 2018.

Plaintiff's opposition was filed on August 31, 2018. (ECF No. 48.) However, the prison mailbox rule applies to the filings of inmates in § 1983 actions. Houston v. Lack, 487 U.S. 266, 275 (1988); Douglas v. Noelle, 567 F.3d 1103, 1107 (9th Cir. 2009). As Plaintiff is incarcerated, his documents are considered filed at the time that he delivered them to prison authorities to be forwarded to the clerk of the court. Douglas, 567 F.3d at 1106; Wolff v. California, 235 F.Supp.3d 1127, 1129 n.1 (C.D. Cal. 2017). Therefore, to be timely, Plaintiff must have placed the opposition into the prison mail on or before August 27, 2018.

The Court considers that Plaintiff's opposition and statement of undisputed facts is signed August 25, 2018. (ECF Nos. 48, 49.) Plaintiff's opposition was received by the Court on August 31, 2018. (ECF Nos. 48, 49.) Further, on August 29, Plaintiff signed his opposition to the statement of non-opposition stating that his opposition to the motion for summary judgment had been placed in the mail. (ECF No. 50.) Given the date that Plaintiff's opposition was filed and considering the time that it would take for the post office to process and deliver the documents, the Court finds that Plaintiff's opposition was timely filed. Plaintiff is advised that he should take into consideration these rules in the future to ensure that his filings are timely. Having found that Plaintiff's opposition was timely filed, Defendant's request to strike Plaintiff's opposition on the ground of timeliness is denied.

Defendant also argues that Plaintiff failed to comply with the Local Rules by failing to reproduce Defendant's statement of undisputed facts and admit those facts that are undisputed and deny those facts that are disputed. Further, Defendants argue that Plaintiff did not cite to any evidence in his statement of disputed facts.

First, Plaintiff filed a statement of undisputed facts, not disputed facts. In his opposition, Plaintiff argues that the substance of the grievances that he filed were sufficient to place Defendants on notice of his claims in this action. To the extent that Plaintiff did not comply with the requirement that he reproduce Defendants' statement of undisputed facts, the Court shall

deem Defendants' facts undisputed. Defendants' request to strike Plaintiff's objection for failure
to comply with the Local Rules is denied.

**B.     Summary of Plaintiff's Allegations**

The Court accepts Plaintiff's allegations as true for evaluating this motion. Plaintiff is in
the custody of the California Department of Corrections and Rehabilitation ("CDCR") and is
currently housed at Mule Creek State Prison. The incidents alleged in the complaint occurred
while Plaintiff was housed at California State Prison ("CSP") Corcoran.

Plaintiff alleges that he began experiencing progressive, worsening pain in his cervical
spine that was radiating to his shoulders and arms and causing a tingling, pins and needles
sensation with numbness to his face, arms and digits. Plaintiff has sought medical attention since
2010 but has not been provided with effective pain medication.

On January 20, 2011, Plaintiff was sent for an MRI of his spine which found that he had
spinal cord compression at C4-C5 and C6-C7 with narrowing of the spinal cord at C6-C7.
Plaintiff had a nerve conduction test on June 10, 2011 which revealed severe left carpal tunnel
syndrome with decreased sensation in the medial nerve distribution. Plaintiff had surgery on
January 11, 2012, in which a left carpal tunnel release was performed by neurosurgeon D. Smith.

Dr. Smith advised Plaintiff that if he was left untreated for several months permanent
irreversible damage to the digits would occur. Plaintiff advised Dr. Ulit that he needed pain
medication and Dr. Ulit told Plaintiff to deal with it and he would not provide medication for
pain. Plaintiff continued to be in debilitating pain from the left carpal tunnel surgery, his right
hand and wrist injury, spine, as well as foot pain which left Plaintiff unable to do basic tasks and
at times left Plaintiff confined to his bed.

On May 28, 2012, Defendant Ulit examined Plaintiff and Plaintiff again requested pain
medication. Defendant Ulit refused to prescribe pain medication and Plaintiff only received
Ibuprofen for his pain which was ineffective for pain relief. For the remainder of 2012, Dr. Ulit
refused to prescribe pain medication for Plaintiff. On December 7, 2012, Plaintiff was in
extreme pain and discomfort and was examined by Dr. Ulit. Dr. Ulit stated that he would not
prescribe pain medication for Plaintiff and there was nothing wrong with Plaintiff although he

did not have the MRI results.

Plaintiff continued to complain over the next two months of worsening pain in his right hand and wrist which was making him unable to write and required assistance in getting dressed. Plaintiff's pain was unbearable each time he moved his right hand, neck, and back.

On February 15, 2013, Dr. Ulit examined Plaintiff for pain in his bilateral wrists and hands, and spine. Defendant Ulit refused to prescribe pain medication for Plaintiff. On February 28, 2013, Plaintiff was having neck pain which radiated down his right arm and back pain, and on examination, Dr. Ulit refused to prescribe pain medication.

Plaintiff was in extreme pain on March 13, 2013, and requested pain medication from Dr. Ulit because the Ibuprofen was only relieving about five percent of his pain, leaving him incapacitated at times and unable to perform his daily functions. Defendant Ulit informed Plaintiff that his request for medication was denied and that Plaintiff would not receive any other pain medication.

On March 20, 2013, Plaintiff was having pain so intense that he was unable to sleep because the pain kept him awake with the slightest movement. Plaintiff filed an Inmate Appeal No. CORHC-13052853 grieving the denial of consultation with a neurologist. Plaintiff continued to submit health care appears grieving the denial of appropriate pain medication over the next six months.

Plaintiff's spinal pain and right carpal tunnel continued to worsen. Defendant Ulit ordered a wrist splint and a nerve conduction study as well as Ibuprofen or Motrin that were ineffective in relieving Plaintiff's pain.

On September 9, 2013, Plaintiff was examined by Defendant Moon and was provided with the nerve conduction study results which revealed right carpal tunnel syndrome and a cervical spine injury. Defendant Moon denied Plaintiff's request for stronger pain medication. Plaintiff explained to Defendant Moon that the pain was so debilitating that at times he was unable to write, get dressed, get out of bed, or properly bath himself.

Plaintiff filed another Inmate Appeal No. CORHC-13053752 grieving that he was being denied pain medication and consultation with a neurologist by Drs. Ulit and Moon and the

policies set in place by Dr. Wang.

On December 10, 2013, Dr. Moon informed Plaintiff that Dr. Wang had again refused his request to see an orthopedic surgeon. Plaintiff was left on Ibuprofen and denied effective pain medication.

On January 31, 2014, Plaintiff was seen by an orthopedic specialist, Dr. David Smith who confirmed that Plaintiff had moderate to severe carpal tunnel syndrome of the right hand and wrist and that surgical intervention was necessary to prevent irreversible deformation of the right digits. Dr. Smith told Plaintiff that permanent damage would likely occur if he did not receive surgery within sixty days.

Plaintiff's condition continued to deteriorate and he had spasms in both legs. Plaintiff saw Dr. Moon who refused to prescribe stronger pain medication. Over the next eight weeks, Plaintiff continued to submit health care requests but was denied. Plaintiff continued to try to obtain stronger pain medication for the next six months but was unsuccessful. On October 21, 2014, Dr. Moon submitted a request for Plaintiff to have right carpal tunnel surgery and Plaintiff received surgery for his right carpal tunnel syndrome.

Plaintiff continued to be extreme spinal pain. On November 20, 2014, Plaintiff submitted an inmate appeal seeking pain medication. Dr. Moon and Registered Nurse Mcgrew ("R.N.") denied Plaintiff pain medication after his body began to swell after surgery. Plaintiff was only provided with Ibuprofen.

On December 4, 2014, Plaintiff sent a request for interview form to Defendant Wang as his pain became extremely debilitating. Defendant Wang ignored Plaintiff's request.

From January 1, 2015 through December 31, 2015, Plaintiff continued to submit numerous healthcare requests seeking relief from intense pain. Plaintiff was denied pain medication.

Plaintiff filed an Inmate Appeal No. CORSC-15001877 grieving that Defendant Moon retaliated against him by performing an "extra hard" exam, twisting Plaintiff's neck with such force that it caused extreme pain during an examination. Plaintiff alleged that this retaliation occurred because he had previously attempted to take notes during an examination and Dr. Moon

got upset and told Plaintiff to get out of his office.

Throughout 2016, Plaintiff continued to have deteriorating spinal pain causing numbness to both arms with tingling sensation, a burning sensation down the right side, leg spasms, limited motion in his cervical spine, and was still only prescribed Ibuprofen.

Plaintiff receive an MRI of his cervical spine on April 4, 2016, that showed mild cord compression at C4-C5 and C6-C7 with narrowing of the spinal cord at C6-C7. Dr. Wang denied Plaintiff's request to see a neurologist. Dr. Wang denied a second request to see a neurologist on June 18, 2016. Plaintiff received a nerve conduction test in August 2016 which showed further progression of his cervical spine condition.

### C. Undisputed Facts

1.      Plaintiff is a state prisoner in the custody of the CDCR. (Sec. Am. Compl. (hereafter "SAC"), ECF No. 15.)

2.      At the time relevant to this lawsuit, Plaintiff was incarcerated at CSP. (Id.)

3.      Defendants were employed at CSP. (Id. at 2-3.[2])

4.      CDCR provides its prisoners with a comprehensive administrative appeals process in which prisoners may administratively appeal any policy, decision, action, condition, or omission by the department or its staff which they can demonstrate as having a material adverse effect upon their welfare. Cal Code Regs. tit. 15, §§ 3084.1-3084.7.

5.      CDCR's inmate appeal process has three levels of appeal: a first formal level; a second formal level; and a third formal level. Cal Code Regs. tit. 15, § 3084.7; (Decl. of S. Gates (hereafter "Gates Decl." ¶ 3, attached to Defendants' Separate Statement of Undisputed Material Facts in Support of Motion for Summary Judgment for Failure to Exhaust Administrative Remedies as Exhibit 1, ECF No. 45 at 8-13.)

6.      All appeals shall be initially submitted and screened at the first level unless the first level is exempted. Cal Code Regs. tit. 15, § 3084.7(a).

7.      The second level of review is for review of appeals denied or not otherwise

---

[2] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

resolved to the inmate's satisfaction at the first level, or for which the first level is otherwise waived. Cal Code Regs. tit. 15, § 3084.7(b).

8. A final decision from the third level of review generally exhausts a prisoner's available administrative remedies. Cal Code Regs. tit. 15, 384.7(d)(3).

9. If an inmate submits an appeal which is untimely, lacks critical information, or otherwise does not comply with regulations governing the appeal process, the appeal may be screened out, not accepted for review, rejected or cancelled. Cal Code Regs. tit. 15, § 3084.2(a)(1); 3084.5; 3084.6; (Gates Decl. ¶ 7.)

10. A rejected appeal is returned to the inmate with the reason(s) for the rejection along with a notification that the inmate may correct and resubmit the appeal within statutory deadlines. Cal Code Regs. tit. 15, 3084.5; 3084.6; (Gates Decl. ¶ 7).

11. A cancelled appeal is returned to the inmate with the reason(s) for the cancellation. Cal Code Regs. tit. 15, § 3084.5; 3084.6; (Gates Decl. ¶ 7).

12. All third level health care appeals of adult inmates are processed by the Health Care Services Correspondence and Appeals ("HCCAB"), formerly the Inmate Correspondence and Appeals Branch, at the California Correctional Health Care Services ("CCHCS") Headquarters. (Gates Decl. ¶ 3.)

13. The HCCAB receives, reviews, and maintains all health care appeals/grievances accepted for the third and final level of review in the inmate health care appeal/grievance process, and renders decisions on these health care appeals/grievances. (Gates Decl. ¶ 4.)

14. All levels of inmate health care appeals are tracked through a computer database known as the Health Care Appeals and Risk Tracking System (HCARTS). (Gates Decl. ¶ 5.)

15. HCARTS tracks inmate health care appeals that are processed by the institution at the first and second levels of review and those processed by the HCCAB and adjudicated at the third level. (Gates Decl. ¶ 5.)

16. HCARTS also tracks health care appeals that were received and ultimately rejected and the reason for the rejection. (Gates Decl. ¶ 5.)

17. All health care appeals are assigned a tracking or log number. (Gates Decl. ¶ 5.)

18.     Plaintiff acknowledges that an administrative remedy process was available to him.  (SAC 2.)

19.     A review of Plaintiff's appeal records revealed that the HCCAB received the three health care appeals alleged in the SAC, COR HC 13052853, COR HC 13053752, and COR HC 14057376.  (Gates Decl. ¶ 9.)

20.     A review of Plaintiff's appeal records revealed that the HCCAB also received the staff complaint against Defendant Moon, SC 1500 1877, alleged in the SAC.  (Gates Decl. ¶ 9.)

21.     On March 21, 2013, the HCCAB received Plaintiff's first health care appeal, assigned the log number COR HC 13052853, wherein he requested to schedule a Magnetic Resonance Imaging (MRI) appointment and to re-schedule an appointment with the neurologist to determine and treat the pain in Plaintiff's RIGHT arm and hand.[3]  (Gates Decl. ¶ 10.)

22.     Appeal COR HC 13052853 was denied at the first level.  (Gates Decl. ¶ 10.)

23.     Appeal COR HC 13052853 was accepted and denied at the second level.  (Gates Decl. ¶ 10.)

24.     Appeal COR HC 13052853 was accepted at the third level on July 19, 2013, and denied on November 12, 2013.  (Gates Decl. ¶ 10.)

25.     On July 12, 2013, the HCCAB received Plaintiff's second health care appeal,

---

[3] Plaintiff includes additional facts in relation to his appeals and Defendants object that they are irrelevant to the issues to be decided in this appeal.  The contents of the appeals shall be considered below in determining whether the appeal exhausted administrative remedies for the allegations contained in Plaintiff's complaint.  The Court overrules Defendants' objection to Plaintiff's Exhibits A, B, C, and E on the ground of lack of foundation and hearsay.  The appearance, contents, and substance of these documents allows the Court to easily conclude that the documents have been authenticated by their distinctive characteristics and that they are what they appear to be, Plaintiff's inmate appeals and staff complaints.  Further, these are the same documents that Defendants' have submitted in support of their motion.

Defendants also object to Exhibit F which is a report of an MRI of the cervical spine on the ground of hearsay and foundation.  Rule 56 requires that, before evidence can be considered on summary judgment, a proper foundation must be laid.  Bias v. Moynihan, 508 F.3d 1212, 1224 (9th Cir. 2007).  Federal Rule of Evidence 901(a) requires "authentication or identification as a condition precedent to admissibility."  A foundation must be laid "by evidence sufficient to support a finding that the matter in question is what its proponent claims" before evidence may be admitted.  Fed. R. Evid. 901(a).  "[D]ocuments which have not had a proper foundation laid to authenticate them cannot support a motion for summary judgment."  Beyene v. Coleman Sec. Services, Inc., 854 F.2d 1179, 1182 (9th Cir. 1988) (quoting Canada v. Blain's Helicopters, Inc., 831 F.2d 920, 925 (9th Cir. 1987).  Plaintiff has not laid a foundation for the MRI results.  Defendants objection to Exhibit F is sustained.  Further, the Court finds that the document is irrelevant for the purposes of the current motion, determining if Plaintiff exhausted his administrative remedies.

assigned the log number COR HC 13053752.  (Gates Decl. ¶ 11.)

26.    Appeal COR HC 13053752 was filed on July 8, 2013, by Plaintiff as a Reasonable Modification or Accommodation Request in CDCR 1824 form, but the Inmate Appeals Office converted it to a CDCR 602-HC appeal and forwarded to the HCCAB for processing.  (Gates Decl. ¶ 11.)

27.    In appeal COR HC 13053752, Plaintiff requested to see a neurologist to determine the proper treatment for the pain in his RIGHT hand and wrist, and numbness.  He also requested an electromyogram/nerve conduction study (EMG/NCS) for carpal tunnel.  (Gates Decl. ¶ 11.)

28.    Appeal COR HC 13053752 was partially granted at the first level of review in that a referral was generated for the EMG/NCS and was submitted for review.  Plaintiff was informed that he did not meet the criteria for a referral to a neurologist due to his current medical condition.  (Gates Decl. ¶ 12.)

29.    On September 27, 2013, at the second level of appeal, appeal COR HC 13053752 was cancelled as to the request for a neurology referral pursuant to California Code of Regulations, Title 15, section 3084.6(c)(2), because Plaintiff had requested a referral to a neurologist in COR HC 13052853, which at the time was pending for consideration at a higher level of appeal.  (Gates Decl. ¶ 12.)

30.    On September 27, 2013, at the second level of appeal, COR HC 13053752 was partially granted as to the request for an EMG/NCS in that the procedure had taken place on September 20, 2013.  (Gates Decl. ¶ 12.)

31.    On November 13, 2013, appeal COR HC 13053752 was denied at the third level.  (Gates Decl. ¶ 12.)

32.    On November 24, 2014, the HCCAB received Plaintiff's third health care appeal, and assigned it the log number COR HC 14057376.  (Gates Decl. ¶ 13.)

33.    In appeal COR HC 14057376, Plaintiff alleged he had surgery to his right arm on November 18, 2014, and his body began to swell up two days after surgery.  (Gates Decl. ¶ 13.)

34.    In appeal COR HC 14057376, Plaintiff's requested relief was for the correct

1    medication and a diagnosis of why his body was swelling.  (Gates Decl. ¶ 13.)

2        35.    In appeal COR HC 14057376, Plaintiff requested an investigation be made on

3    Defendant Moon, M.D.  (Gates Decl. ¶ 13.)

4        36.    At the first level of review appeal, on January 8, 2015, COR HC 14057376 was

5    partially granted in that the provider had explained to Plaintiff that swelling to his right hand was

6    a normal response to surgery.  (Gates Decl. ¶ 14.)

7        37.    At the first level of review, appeal COR HC 14057376 was partially granted in

8    that the provider noted that Plaintiff's pain medication regimen was appropriate.  (Gates Decl. ¶

9    14.)

10       38.    At the first level of review of appeal COR HC 14057376, Plaintiff's request for an

11   investigation into Defendant Moon was denied in that the appeal was deemed not to meet staff

12   complaint criteria.  (Gates Decl. ¶ 14.)

13       39.    Appeal COR HC 14057376 was accepted at the second level on January 28, 2015,

14   and was partially granted on March 11,2015 for the same reason it was partially granted at the

15   first level of review.  (Gates Decl. ¶ 14.)

16       40.    Appeal COR HC 14057376 was accepted at the third level, and denied on August

17   26, 2015.  (Gates Decl. ¶ 14.)

18       41.    On April 23, 2015, Plaintiff submitted CDCR 602-HC form, in which Plaintiff

19   alleged that during a consultation of the same day with Defendant Moon, M.D., Defendant Moon

20   was rude and put pressure on his neck and back, causing Plaintiff to cry out in pain during an

21   examination.  (Gates Decl. ¶ 15.)

22       42.    The HCCAB accepted Plaintiff's CDCR 602-HC form, dated April 23, 2015 as a

23   staff complaint and assigned the log number COR SC 15001877.  (Gates Decl. ¶ 16.)

24       43.    The first level of appeal of COR SC 15001877 was bypassed by the appeals

25   coordinator.  (Gates Decl. ¶ 16.)

26       44.    On June 4, 2015, the HCCAB issued a second level response to Plaintiff's staff

27   complaint, COR SC 15001877, against Defendant Moon.  (Gates Decl. ¶ 17.)

28       45.    At the second level of review of COR SC 15001877, on June 4, 2015, Plaintiff

was informed, "All issues unrelated to the allegation of staff misconduct must be appealed separately and will not be addressed in this response. You do not exhaust administrative remedies on any unrelated issue not covered in this response or concerning any staff member not identified by you in this complaint." (Gates Decl. ¶ 17.)

46.     On August 16, 2015, the HCCAB accepted staff complaint COR SC 15001877 at the third level against Defendant Moon, and denied it on October 29, 2015. (Gates Decl. ¶ 17.)

47.     In the third level response of the HCCAB, Plaintiff was informed, "Your appeal was adjudicated as a staff complaint, you are advised to submit . . . a separate CDCR 602-HC for requests related to medical issues you feel are unresolved." (Gates Decl. ¶ 17.)

48.     Plaintiff did not submit a separate health care appeal for COR SC 1500 1877. (Gates Decl. ¶ 17.)

49.     A review of the HC Tracking System for grievances filed by Plaintiff revealed that Plaintiff did not file a grievance related to his treatment for his left hand or wrist, left carpel tunnel injury, foot, neck, cervical spine or lumbar injury at any time between January 2013 to November 1, 2017 or to the present. (Gates Decl. ¶ 18.)

**D.     Whether Plaintiff Exhausted Administrative Remedies**

In his second amended complaint, Plaintiff alleges that Defendants Ulit, Moon, and Wang were deliberately indifferent to his serious medical needs in the following manner. Dr. Ulit and Dr. Moon refused to provide pain medication from left carpal tunnel surgery, his right hand and wrist injury, and foot, neck, and spinal pain. Plaintiff also alleged that Defendants denied him pain medication and consultation with a neurologist and orthopedic surgeon; and that Defendant Moon retaliated against Plaintiff by performing an extra hard examination causing him pain during an examination. Finally, Plaintiff alleges that Dr. Wang denied Plaintiff's request to see a neurologist after Plaintiff received the results of an MRI of his cervical spine.

1.     Inmate Appeal No. COR HC 13052853

Plaintiff submitted an Inmate Appeal No. COR HC 13052853, dated March 20, 2013, grieving that on February 13, 2013, Dr. Ulit had referred him to a consultative exam regarding numbness and excruciating pain from his right arm and shoulder down to his hand that had lasted

for about two months.   (ECF No. 45 at 22, 24.)[4]  Plaintiff stated that the consultation was addressed by Dr. Belgisgolva at ACH on March 13, 2013, and at that time, Dr. Belgisgolva had refused to either perform an MRI on Plaintiff or schedule him for an appointment with a specialist or a neurologist to determine the cause of his severe pain.  (Id. at 24.)  Plaintiff alleged that the severe pain has prevented him from sleeping properly and that Dr. Ulit had prescribed Ibuprofen that has not had any effect.  (Id.)

Plaintiff's appeal was denied at the first level on April 13, 2013.  (Id. at 26.)  The denial indicates that Plaintiff was interviewed by Dr. Ulit and was seen and evaluated.  (Id.)  Plaintiff had an MRI completed on January 2011 that showed disk disease so a new MRI is not needed for his treatment plan.  (Id.)  Also, a referral to a neurologist was submitted, but not approved.  (Id.)  The recommendation was clinical management which would be put in effect.  (Id.)

On the second level review, Plaintiff stated that he was seen by Dr. Clark at ACH on April 23, 2013; and Dr. Clark had determined that an EMG of his right hand was necessary.  (Id. at 23.)  Plaintiff alleged that the extreme pain and restricted mobility had caused him great inconvenience and he was afraid if it was not treated he would lose the use of his hand.  (Id.)

Plaintiff's request was denied at the second level on June 19, 2013, by Dr. Wang.  (Id. at 27-28.)  The response addressed two issues, the request for an MRI appointment and an appointment with a neurologist.  The request for an MRI appointment was denied because Plaintiff did not meet the criteria for an MRI and clinical management was recommended.  (Id. at 27.)  The request for a neurology consult was denied because Dr. Clark had checked and learned that a referral would be denied because Plaintiff's thyroid levels were off.  (Id. at 28.)  Dr. Clark did not complete a referral for Plaintiff, but spoke to Dr. Ulit who is monitoring Plaintiff's thyroid levels in an attempt to get them within normal limits.  (Id.)  The test that Dr. Clark wanted to have performed cannot be done until Plaintiff's thyroid levels are normal.  (Id.)  Dr. Ulit had ordered blood tests and was adjusting Plaintiff's medication.  (Id.)  Once Plaintiff's thyroid level is normal, further testing for his wrist and possible carpal tunnel syndrome would

---

[4] This exhibit is also attached to Plaintiff's statement of undisputed facts as exhibit A.  For convenience, the Court shall only reference the appeal exhibits attached to Defendants' motion for summary judgment.

be investigated.  (Id.)

On third level review, Plaintiff stated that on May 20, 2013, his thyroid was at normal levels.  (Id.)  Plaintiff contended that the Chief Medical Officer should be informed of the current changes because the denial stated that once his thyroid was normal further testing on his wrist and possible carpal tunnel syndrome would be investigated.  (Id.)

At the director's level, Plaintiff's appeal was denied.  (Id. at 20-21.)  A review of Plaintiff's medical record indicated:

- An MRI was completed in January 2011, which showed neck degenerative disk disease with radicular pain to upper extremity.  Degenerative disc disease [is] a term used to describe the normal changes in your spinal discs as you age.  There is no medical indication noted in the eUHR that another MRI is necessary.
- A Request for Services (RFS) completed on February 15, 2013 for a neurology consultation was denied on February 21st noting continued clinical management.  Clinical management was continued with you being prescribed Gabapentin and Ibuprofen.  A comprehensive accommodation chrono was updated on July 17, 2013 to include permanent wrist splints.  An RFS was completed on July 27, 2013 and approved on July 29th for a nerve conduction study.  The study was completed on September 20, 2013 with the conclusion of moderate to severe right carpal tunnel syndrome with no evidence of electrical instability of the right arm.  No neurological deficits were noted on your lower extremities.  An RFS was completed on October 22, 2013 for Orthopedics regarding your carpal tunnel syndrome.  The RFS was denied on October 24th because InterQual criteria was not met (insufficient information to justify).

(Id. at 20.)

Defendants argue that this appeal does not mention Dr. Moon, Dr. Wang, or Plaintiff's left hand or wrist, left carpal tunnel injury, foot, neck, cervical spine or lumbar injury.  Plaintiff counters that this appeal suffices to exhaust his administrative remedies because it describes symptoms consistent with both a cervical spine injury and carpal tunnel syndrome, but that are more consistent with a cervical spine injury.

In order to find that Plaintiff's appeals exhausted his administrative remedies, the appeals must "provide enough information . . . to allow prison officials to take appropriate responsive measures."  Griffin v. Arpaio, 557 F.3d 1117, 1121 (9th Cir. 2009) (quoting Johnson v. Testman, 380 F.3d 691, 697 (2nd Cir. 2004)).  The primary purpose of the grievance is to alert the prison to the problem and facilitate resolution.  Griffin, 557 F.3d at 1120; Reyes v. Smith, 810 F.3d 654,

659 (9th Cir. 2016). "A grievance suffices to exhaust a claim if it puts the prison on adequate notice of the problem for which the prisoner seeks redress. Sapp v. Kimbrell, 623 F.3d 813, 824 (9th Cir. 2010). The level of detail required to provide adequate notice must comply with the institution's regulations. Bock, 549 U.S. at 218. Thus, the California prison system's regulations "define the boundaries of proper exhaustion." Marella v. Terhune, 568 F.3d 1024, 1027 (9th Cir. 2009).

California's regulations require the inmate to describe the specific issue under appeal and the relief requested. Cal Code Regs. tit. 15, § 3084.2(a). The regulations also require for the inmate to list all staff members involved and to describe their involvement. Cal Code Regs. tit. 15, § 3084.2(a)(3). However, the Ninth Circuit has recently held that the failure to name all involved defendants is not fatal where the prison decides a procedurally flawed grievance on the merits. Reyes, 810 F.3d at 657. Therefore, "a prisoner exhausts 'such administrative remedies as are available,' 42 U.S.C. § 1997e(a), under the PLRA despite failing to comply with a procedural rule if prison officials ignore the procedural problem and render a decision on the merits of the grievance at each available step of the administrative process." Reyes, 810 F.3d at 658.

Here, the specific issue that Plaintiff grieved in Appeal No. COR HC 13052853 was numbness and pain from his right arm and shoulder down to his hand that was keeping him from sleeping. (ECF No. 45 at 22.) Plaintiff was seeking an "appointment to have an MRI done or reschedule an appointment with a neurologist to determine and treat the pain in my arm and hand." (Id.) This grievance is not sufficient to exhaust Plaintiff's administrative remedies regarding his left hand or wrist, left carpal tunnel injury, foot, neck, cervical spine or lumbar injury. Although Plaintiff argues that he is not medically trained and that he could not fully appreciate the origins of the pain he was experiencing, his second amended complaint alleges the failure to treat severe back pain. Nothing in the grievance file would be sufficient to place Defendants on notice that Plaintiff was contending he was not receiving proper treatment for his back pain. To the extent that Plaintiff is arguing that his shoulder pain was caused by his spinal injuries, the cause of Plaintiff's shoulder and arm pain goes to the merits of the claim and is not

an exhaustion issue.

Plaintiff argues that on February 13, 2013, he spoke to Defendant Ulit about both his hands, wrists, foot, and back. However, in order to exhaust his administrative remedies, Plaintiff was required to exhaust his administrative remedies prior to bringing suit. Therefore, Plaintiff had to file an appeal grieving the specific issue for which he is seeking relief. To the extent that Plaintiff appears to be arguing that the prison was on notice due to his complaints to Dr. Ulit, the primary purpose of a grievance is to alert prison officials to a problem and allow them to address it prior to being hauled into court. Bock, 549 U.S. at 219. Here, the fact that Plaintiff mentioned his complaints to Dr. Ulit is not sufficient to place the prison on notice that he was not receiving proper care for his left hand and wrist, foot, and back pain. Plaintiff was required to file a grievance to allow prison officials to investigate his complaints of lack of proper care.

In this instance, the grievance does place the defendants on notice that in February 2013, Plaintiff was experiencing severe pain in his right arm that was keeping him from sleeping and that Defendant Ulit had only prescribed Ibuprofen that has not had any effect. (Id. at 24.) Plaintiff was seeking treatment for the pain in his right arm and hand and, although he did not specifically name the individual responsible for the denial of his referrals to a specialist, the grievance was processed through all levels of the appeals process. In his second amended complaint, Plaintiff alleges that Defendant Wang, as the Chief Medical Officer, denied his requests for referrals to the specialists. Therefore, the prison had an adequate opportunity to address Plaintiff's grievance and his failure to name Defendant Wang is not fatal to his claim. McClure v. Chen, 246 F.Supp.3d 1286, 1291 (E.D. Cal. 2017). Appeal No. COR HC 13052853 does exhaust Plaintiff's administrative remedies to the claim that he was denied referral to a neurologist or for an MRI for his right hand and arm pain and that Defendant Ulit failed to provide proper medication to treat the severe pain in Plaintiff's right arm and wrist in February 2013. (SAC at 7-8.)

2.     Inmate Appeal No. COR HC 13053752

Plaintiff submitted a reasonable modification or accommodation request, dated July 8, 2013. (ECF No. 45 at 41-42.) Plaintiff complained that he had extreme pain in his right hand

and wrist.  (Id. at 41.)  He stated that the pain had moved further up his arm and did not allow him to sleep through the night or function properly during the day.  (Id.)  Plaintiff contended that the probable cause was carpal tunnel syndrome.  (Id.)  Plaintiff said that he had requested medical attention for the pain in his right hand and wrist and had pleaded with nurse Mcgrew and Dr. Ulit about the extreme pain, but had only been prescribed Ibuprofen.  (Id.)  Plaintiff sought to see a neurologist to determine the proper treatment for the pain and numbness in his right hand and wrist and an EMG/NCS to determine if it was carpal tunnel.  (Id.)  The accommodation request was converted to Inmate Appeal No. COR HC 13053752.  (Id. at 39-42.)

Plaintiff's appeal was granted in part at the first level in that Plaintiff was examined by Dr. Ulit.  (Id. at 43.)  Plaintiff was found not to meet the criteria for referral to a neurologist, but a referral was generated for an EMG/NCS for his carpal tunnel.  (Id.)  Plaintiff appealed to the second level stating that nothing had been done to substantiate his claim and he felt that further investigation was required.  (Id. at 40.)

Plaintiff's appeal was partially granted at the second level of review.  (Id. at 44.)  Plaintiff's request for a neurology referral was denied because it was already under consideration in Inmate Appeal No. 13052853.  (Id.)  Plaintiff's request for an EMG/NCS was granted as the procedure had already occurred and he would receive a follow-up.  (Id.)

Plaintiff appealed the decision to the third level stating that he had been dealing with pain in his right hand for 12 months with little to no help.  (Id. at 40.)  Plaintiff had an EMG on September 20, 2013, but complained that he had not been referred to a specialist.  (Id.)  He stated that he was living in extreme pain daily with no resolution.  (Id.)

Appeal No. COR HC 13053752 was denied at the third level on January 21, 2014.  (Id. at 37-38.)  Upon review of Plaintiff's medical record, it was found that:

> • Your CDCR 1824, Reasonable Modification or Accommodation Request dated July 8, 2013, was reviewed by the Inmate Appeals Office (IAO) who determined your issues and requests did not meet the criteria for processing as a CDCR 1824, Reasonable Modification or Accommodation Request.  The IAO converted your CDCR 1824, Reasonable Modification or Accommodation Request to a CDCR 602-HC, Patient/Inmate Health Care Appeal, which was forwarded to the Health Care Appeals Office for processing.
> • You have received Primary Care Provider (PCP) follow-up evaluations to December 10 ,2013, related to your history of chronic right hand/wrist pain.  On

September 20, 2013, an EMG/NCS were completed showing results of moderate to severe right carpel tunnel syndrome. There was no evidence of ulnar neuropathy, radiculopathy or polyneuropathy of the right arm.
• On October 22, 2013, the PCP conducted a follow-up visit, and submitted a CDC 7243, Physician Request for Services (RFS) to Ortho which had been denied for lack of clinical documentation; subsequently on December 10, 2013, the PCP followed-up and resubmitted the RFS which was approved per InterQual criteria and is pending scheduling, which is routine.
• You have been prescribed two active medications for pain management.

(Id. at 37.) Plaintiff was found to have been receiving the treatment deemed medically necessary for his condition. (Id. at 38.)

Appeal No. COR HC 13053752 only addressed Plaintiff's complaints of pain in his right hand, wrist, and arm. This grievance is not sufficient to exhaust Plaintiff's administrative remedies regarding his left hand or wrist, left carpal tunnel injury, foot, neck, cervical spine or lumbar injury.

3. Inmate Appeal No. COR HC 14057376

Plaintiff filed Inmate Appeal No. COR HC 14057376, dated January 20, 2014, grieving that he had received surgery on November 18, 2014, and his whole body was swelling and the pain medication was not relieving his pain. (ECF No. 45 at 55-56.) Plaintiff stated that he had been seen in the medical clinic and had explained to nurse Mcgrew that prior to surgery the specialist informed Plaintiff that he had anemia, a urinary tract infection, and that the lower section of his lungs was not filling with air. (Id. at 56.) Plaintiff had informed nurse Mcgrew and Dr. Moon that he was having pain and needed a different pain medication. (Id.) Dr. Moon refused to change Plaintiff's pain medication. (Id.) Plaintiff stated that the specialist told him to report if he had swelling and excessive pain, and that Dr. Moon was disregarding the specialist's instructions by failing to address it and stating that Plaintiff would be okay. (Id.) Plaintiff requested the correct pain medication, diagnosis of why he was swelling, an investigation of Dr. Moon's deliberate indifference, and Dr. Moon's medical license number. (Id. at 55-56.)

Plaintiff was interviewed by Dr. Ulit on December 24, 2014. (Id. at 57.) Plaintiff's appeal was granted in part. Dr. Ulit found that Plaintiff's swelling was a normal response to the surgery and that his current medication regime was appropriate. (Id.)

At the second level of review, the appeal was partially granted, and it was found that

Plaintiff was receiving medications and treatment based on the professional medical judgment of the treating provider.  (Id. at 59-60.)  Plaintiff's appeal was denied at the third level on August 26, 2015.  (Id. at 53-54.)  At the third level it was found that:

> • Documentation is supportive of you receiving Primary Care Provider (PCP) evaluation and treatment as determined medically indicated for your appeal issues.  You received PCP follow-up evaluation and treatment to July 30, 2015.  In addition, you are currently enrolled in the Chronic Care Program (CCP) where your medical condition and medication needs are closely monitored.
> • You received carpal tunnel surgery to your right wrist on November 18, 2014, with a 14-day work lay-in.
> • A non-formulary drug request for gabapentin was approved on November 21, 2014.
> • You were prescribed morphine sulfate and ibuprofen beginning November 26, 2014.
> • Notation from a PCP follow-up appointment on December 24, 2014, indicates improved healing with mild swelling.
> • You were seen and evaluated for an orthopedic follow-up appointment on December 5, 2014, at which time your sutures were removed, you received a wrist brace and were advised to exercise your hand.

(Id. at 53-54.)

This appeal was sufficient to grieve Plaintiff's allegations that Dr. Moon did not provide appropriate treatment for his swelling and pain medication following the carpal tunnel surgery on his right hand.  (SAC 5.)  However, this grievance makes no mention of any of the other ailments Plaintiff alleges in the second amended complaint and is not sufficient to exhaust Plaintiff's administrative remedies regarding his left hand or wrist, left carpal tunnel injury, foot, neck, and cervical spine or lumbar injury.

    4.    Inmate Appeal No. COR SC 15001877

Plaintiff filed Inmate Appeal No. COR SC 15001877 grieving that he was seen in medical on April 23, 2015, and that Dr. Moon was rude to him and applied pressure to his neck causing Plaintiff pain.  (ECF No. 66-67.)  Plaintiff stated that Dr. Moon began to question Plaintiff on his many medical issues: gout, back and neck pain, sleep apnea, etc.  (Id. at 66.)  When Dr. Moon asked about Plaintiff's back and neck pain, Plaintiff explained to Dr. Moon that his pain started in his left side of his lower back and ended up in the left side of his neck and up to his head.  (Id. at 67.)  Plaintiff told Dr. Moon that the pain was so intense that it caused the left side of Plaintiff's face to become numb.  (Id.)  Dr. Moon stated that he saw Plaintiff up and

walking around all the time, so Plaintiff decided to take notes. (Id.) Dr. Moon became aggressive and demanded that Plaintiff put his notes away. (Id.) When Plaintiff questioned the demand, Dr. Moon yelled at Plaintiff and told him to get out of the office, calling Correctional Officers Romero and Jackson to take him away. (Id.) Later that afternoon, Plaintiff was informed that Dr. Moon wanted to see him. (Id.) Dr. Moon continued the examination and began to palpate Plaintiff's neck and spine to locate his pain. (Id.) Plaintiff explained where the pain was and Dr. Moon took hold of Plaintiff's head, applying pressure and twisting his neck, asking Plaintiff if it hurt. (Id.) Plaintiff yelled in pain stating yes. (Id.) Plaintiff alleged that Dr. Moon retaliated against him by causing him additional pain by being overly aggressive during the examination. (Id.)

Plaintiff sought medical attention to address his medical issues and to be seen by a different physician. (Id. at 66.) Plaintiff stated he had extreme pain and anxiety and could no longer function in his normal capacity. (Id. at 67.) Plaintiff stated that his pain was increasing by the day and Dr. Moon was not performing his duties and sought to be sent to a medical facility that was better suited to meet his medical needs. (Id.) Plaintiff also sought compensation for his pain and suffering. (Id.)

Plaintiff's appeal issue was stated to be that Dr. Moon would not allow him to take notes, during a visit, sent Plaintiff away and then called Plaintiff back, performing a painful examination in retaliation. (Id. at 68.) Plaintiff was advised that "[a]ll issues unrelated to the allegation of staff misconduct must be appealed separately and will not be addressed in this response. You do not exhaust administrative remedies on any unrelated issue not covered in this response or concerning any staff member not identified by you in this complaint." (Id.)

Plaintiff's appeal was bypassed at the first level. (Id. at 66.) At the second level, the appeal states:

> You stated that when you saw Dr. Moon on 4/23/2015, you had many questions, and that Dr. Moon would not allow you to ask any questions and had commented that he had seen the you 'walking around all the time' (inmate desired walker back for low back pain and knee problems). When you took out a pencil and paper to take your own notes on the discussion, Dr. Moon became angry and told you to put your notes away. When you asked if he also should not be able to take notes, you stated that Dr. Moon yelled at you 'You're done!' and called custody

to escort you out. You state that later that day, you were called back to the clinic by Dr. Moon to finish his exam. You state Dr. Moon then began to press on your spine and back to locate your pain areas, then put pressure on your head and turned your neck, producing severe pain. He then said, 'I didn't see anything wrong', and had you leave.

(Id. at 68.) The appeal was partially granted in that the appeal was complete and all issues were adequately addressed. (Id.) Plaintiff's appeal was denied on October 29, 2015, at the third level. (Id. at 63-65.) Plaintiff was advised to submit a CDCR 7362, Health Care Services Request, or a separate CDCR 602-HC for requests related to his medical concerns that he believed were unresolved. (Id. at 64.)

Requiring proper exhaustion serves all the purposes of the PLRA: to eliminate unwarranted federal-court interference with the administration of prisons; afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case; and to reduce the quantity and improve the quality of prisoner suits. Woodford v. Ngo, 548 U.S. 81, 93-94 (2006). Proper exhaustion requires an inmate to comply with the system's critical procedural rules. Ngo, 548 U.S. at 95. Therefore, to properly exhaust administrative remedies, Plaintiff must comply with the CDCR grievance procedures. Bock, 549 U.S. at 218.

Pursuant to the CDCR regulations, health care appeals involving an inmates medical, dental, and mental health care issues must be processed by the CCHCS and are reviewed by the HCCAB who renders decisions on health care appeals. (Gates Decl. ¶¶ 3, 4.) Here, Plaintiff filed Inmate Appeal No. COR SC 15001877 as a staff complaint grieving that Dr. Moon was rude to him and retaliated against him by being overly aggressive during a physical examination. Pursuant to the policy, Plaintiff was advised that ""[a]ll issues unrelated to the allegation of staff misconduct must be appealed separately and will not be addressed in this response. You do not exhaust administrative remedies on any unrelated issue not covered in this response or concerning any staff member not identified by you in this complaint." (ECF No. 45 at 68.) Although Plaintiff mentioned the medical issues that he was discussing with Dr. Moon during his medical appointment, Appeal No. COR SC 15001877 only exhausted Plaintiff's staff complaint regarding Dr. Moon ordering Plaintiff out of his office and conducting a rough examination.

Plaintiff was advised in the second level response that any issues unrelated to the allegation of staff misconduct must be separately appealed. Plaintiff's medical concerns were required to be raised by filing a health care grievance, and Plaintiff did not do so.

Plaintiff did not exhaust his deliberate indifference claims in this action through Inmate Appeal No. COR SC 15001877.

### 5. Inmate Appeal No. COR HC 15057877

Plaintiff submitted an accommodation request dated February 9, 2015, that was converted to Inmate Appeal No. COR HC 15057877. (ECF No. 45 at 83.) Plaintiff described his disability as "DNM, (2) knee surgeries, (3) bulging discs in my lower spine, degenitive [sic] bone disease in spin [sic], nerve compression, etc." (Id.) Plaintiff stated that on February 6, 2015, he was informed that his walker was discontinued yet his chrono had been renewed the prior month. (Id.) Plaintiff contended that his walker was a permanent accommodation and that Dr. Moon had no reason to discontinue it other than retaliation because Plaintiff had filed a complaint with the medical board against Dr. Moon. (Id.) Plaintiff sought to have his walker returned and an investigation into Dr. Moon's conduct. (Id.)

Plaintiff's appeal was denied at the first level because his walker was discontinued due to Plaintiff being observed multiple times on the yard, walking normally with no limitations seen, and no symptoms for the need for a walker were found. (Id. at 81.) The appeal was denied at the second level. (Id. at 78-79.) Defendants present uncontradicted evidence that this appeal was not pursued beyond the second level. (Id. at 44.) This did not exhaust administrative remedies as the grievance was not appealed to the third level. Further, Plaintiff did not appeal any of the issues raised in his second amended complaint. This appeal is not sufficient to exhaust Plaintiff's claims regarding the failure to treat his left hand or wrist, left carpal tunnel injury, foot, neck, and cervical spine or lumbar injury.

### 6. Conclusion

Review of the grievances filed by Plaintiff demonstrates that Plaintiff did exhaust his administrative remedies on the claims regarding his right hand, wrist, and arm complaints beginning in February 2013. Plaintiff alleges in his second amended complaint that Dr. Ulit was

deliberately indifferent by failing to proscribe pain medication for his right hand, wrist, and arm pain in 2012. Yet, Plaintiff has not presented any evidence that he filed an administrative grievance regarding the issue prior to submitting Inmate Appeal No. COR HC 13052853. In this appeal Plaintiff grieved that on February 13, 2013, Dr. Ulit had referred him to a consultative exam regarding numbness and excruciating pain from his right arm and shoulder down to his hand that had lasted for about two months. (ECF No. 45 at 22, 24.). Plaintiff alleged that the severe pain has prevented him from sleeping properly and that Dr. Ulit had prescribed Ibuprofen that has not had any effect. (Id. at 24.) As Plaintiff did not submit an inmate appeal prior to grieving this February 2013 visit, Defendants' motion for summary judgment on Plaintiff's claims that he did not receive proper pain medication for his right hand, wrist, and arm complaints during 2012 should be granted.

The Court finds that Plaintiff failed to exhaust administrative remedies for his claims alleging failure to treat his left hand or wrist, left carpal tunnel injury, foot, neck, and cervical spine or lumbar injury because he did not file an inmate appeal which grieved these issues. Defendants' motion for summary judgment on Plaintiff's claims that Drs. Ulit, Moon, and Wang failed to provide proper pain relief and refer him to a specialist for his left hand or wrist, left carpal tunnel injury, foot, neck, and cervical spine or lumbar injury should be granted.

Plaintiff did file an appeal grieving the failure to refer him to a specialist for his right hand, arm, and wrist pain. Although Plaintiff's appeal did not specifically name Dr. Wang, the appeal was processed through the third level review and was considered on the merits. Reyes, 810 F.3d at 657. Defendants' motion for summary judgment on the ground that Plaintiff failed to name Dr. Wang in his inmate appeals should be denied.

## IV.

## RECOMMENDATIONS

Based on the foregoing, IT IS HEREBY RECOMMENDED that:

1.  Defendants' motion for summary judgment be GRANTED IN PART AND DENIED IN PART as follows:

a.     Defendants' motion for summary adjudication on Plaintiff's claims related to his left hand or wrist, left carpal tunnel injury, foot, neck, and cervical spine or lumbar injury be GRANTED for failure to exhaust administrative remedies;

b.     Defendants' motion for summary adjudication on Plaintiff's claims alleging a denial of pain medication for his right hand, wrist, and arm complaints during 2012 be GRANTED for failure to exhaust administrative remedies;

c.     Defendants' motion for summary adjudication on Plaintiff's claims against Defendant Wang be DENIED; and

d.     This action proceed on Plaintiff's claims against Defendants Ulit, Moon, and Wang regarding denial of pain medication and failure to refer him for treatment for his right arm, wrist, and shoulder pain beginning in February 2013.

This findings and recommendations is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within thirty (30) days of service of this recommendation, any party may file written objections to this findings and recommendations with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **January 9, 2019**

UNITED STATES MAGISTRATE JUDGE